Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Telephone: (760) 929-9303
Facsimile:  (760) 929-9260

Attorneys for Plaintiff JAMES JACKSON,
previously proceeding pseudonymously as "John Doe"

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JAMES JACKSON, previously proceeding pseudonymously as JOHN DOE, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

HEALTH CENTER PARTNERS OF SOUTHERN CALIFORNIA; COUNCIL OF COMMUNITY CLINICS (d/b/a Health Center Partners of Southern California), previously identified as Doe Defendant No. 1; and NETGAIN TECHNOLOGY, LLC, previously identified as Doe Defendant No. 2;

Defendants.

Case No. 3:24-cv-00106-LL-DDL

[Related to Case No. 3:21-cv-01587-LL-DDL]

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**

**(1) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ.*;**
**(2) BREACH OF CALIFORNIA SECURITY NOTIFICATION LAWS, CALIFORNIA CIVIL CODE § 1798.82; AND**
**(3) BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ.***

**JURY TRIAL DEMANDED**

Plaintiff James Jackson (or "Plaintiff"), previously proceeding pseudonymously as "John Doe,"[1] by and through his attorneys, bring this class action on behalf of himself individually and all others similarly situated, against Defendants Health Center Partners of Southern California; COUNCIL OF COMMUNITY CLINICS (or "CCC"), previously identified as Doe Defendant No. 1, and Defendant NETGAIN TECHNOLOGY, LLC ("NETGAIN"), previously identified as Doe Defendant No. 2, (collectively referred to as "Defendants"), and alleges upon information and belief as follows:

## INTRODUCTION

1.      This class action arises from the negligent and failure of Defendants to properly create, maintain, preserve, and/or store confidential, medical and personal identifying information of Plaintiff and all other persons similarly situated which allowed an unauthorized person to gain access to a computer database server of Defendants from October 22, 2020 to December 3, 2020, causing unauthorized access, viewing, exfiltration, theft, and/or disclosure of unencrypted medical and personal identifying information of Plaintiff and other persons similarly situated, to at least one unauthorized person resulting in violations of the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), the Security Notification Laws, Civil Code § 1798.82, and the Business and Professions Code §§ 17200 *et seq.*   Under the Act, Plaintiff, and all other persons similarly situated, have the right to expect that the confidentiality of their medical information in possession of Defendants and/or derived from Defendants to be reasonably

---

[1] In commencing this action, Plaintiff used the pseudonym. "John Doe," in place of his real name because at all times relevant to this action, Plaintiff is a health care patient under Civil Code § 56.05(l) and has individual privacy concerns and a reasonable fear of harassment in light of the serious nature of the data security incident alleged herein.  Plaintiff had ***not*** been proceeding ***anonymous*** in this action since Plaintiff had sent a letter to Defendant Health Center Partners of Southern California disclosing his real name and requesting further information about the data security incident.  Nevertheless, on December 7, 2021, the Hon. Matthew C. Braner ordered that Plaintiff file an amended complaint in his real name, replacing the pseudonym "John Doe."

1  preserved and protected from unauthorized access, viewing, exfiltration, theft, and/or
2  disclosure.

3      2.    As alleged more fully below, failing to take adequate and reasonable
4  measures to ensure its data systems were protected against unauthorized intrusions,
5  by failing to invest in cyber security and data protection safeguards, failing to
6  implement adequate and reasonable security controls and user authorization and
7  authentication processes, failing to limit the types of data permitted to be transferred,
8  failing to properly and adequately educate and train its employees, and to put into
9  place reasonable or adequate computer systems and security practices to safeguard
10 customers' and patients' medical and personal identifying information, Defendants
11 negligently created, maintained, preserved, and stored Plaintiff's and the Class
12 (defined *infra*) members' medical and personal identifying information in possession
13 of or derived from Defendants allowed such information to be accessed and actually
14 viewed by at least one unauthorized third party, without Plaintiff's and the Class
15 members' prior written authorization, which constitutes unauthorized disclosure
16 and/or release of their information in violation of Civil Code §§ 56.10(a) and
17 56.101(a) of the Act.   In fact, Defendant Health Center Partners of Southern
18 California's form letter, entitled "**Notice of Data Breach**," dated April 12, 2021,
19 signed by Henry Tuttle, President & Chief Executive Officer, Health Center Partners
20 of Southern California, sent to Plaintiff and all other persons similarly situated,
21 informing them, in part, of "a recent data security incident experienced by Netgain
22 Technology, LLC ('Netgain'), the IT service provider for Health Center Partners of
23 Southern California ('HCP')" and stating, in part, "HCP supports community health
24 centers in a variety of ways, including collaborative grant-funded programs and
25 services for Neighborhood Healthcare" and "**What Happened:** Netgain recently
26 informed HCP that it had experienced a data security incident that involved systems
27 containing HCP data.... According to Netgain, in late September 2020, an
28 unauthorized third party gained access to Netgain's digital environment, and between

October 22, 2020 to December 3, 2020, the unauthorized third party obtained certain files containing HCP data. Netgain stated that it paid an undisclosed amount to the attacker in exchange for assurances that the attacker will delete all copies of this data and that it will not publish, sell, or otherwise disclose the data.... The information involved varies depending on the individual but may include the following: name, address, date of birth, diagnosis/treatment information and treatment cost information.  Once we learned that HCP data may have been involved in the incident, we worked with our cybersecurity experts to review the impacted files and identify the individuals whose information was contained in such files so that we may notify such individuals. Our investigation revealed that the impacted files contained your personal information." Hereinafter such incident is referred to as the Data Breach. An exemplar of Defendant Health Center Partners of Southern California's "**Notice of Data Breach**" form letter submitted to the Attorney General of the State of California is attached hereto as **Exhibit A**.

3. On April 8, 2021, Neighborhood Healthcare caused a form letter, entitled "**Notice of Data Breach**," dated April 8, 2021, signed by  Rakesh Patel, "CEO,  Neighborhood Healthcare," to be submitted to the Attorney General of the State of California, and identified the Data Breach as occurring on "November 24, 2020" and "December 3, 2020." In its breach notice, Neighborhood Healthcare stated that "On November 24, 2020, Netgain became aware of a security incident that involved unauthorized access to portions of the Netgain environment and Netgain client environments and began taking steps to investigate this incident," that "on December 3, 2020, the attacker launched a ransomware attack against Netgain, encrypting a subset of files owned by Netgain and Netgain's clients and disrupting Netgain's operations," and "Neighborhood Healthcare learned of the ransomware attack on December 3, 2020." On such information and belief, Plaintiff alleges that either NETGAIN or NH or both informed CCC doing business as HCP of the Data Breach  on  December  3,  2021.  Additionally,  Netgain  Technology,  LLC

("NETGAIN") stated in a blog post, entitled "What we learned as a ransomware victim – so you don't become one," that "late last year, Netgain was the victim of a criminal ransomware attack…. to become a victim of such an attack is both humbling and galvanizing…. we identified additional opportunities to strengthn our security posture in a continuous journey with an ongoing commitment to ensure this remains top-of-mind.  As part of our incident response, we have implemented a number of these identified enhancements to our security posture and have continued to progress a multipronged approach.   We've deployed new tools, revised policies and enforcement procedures, and implemented an advanced around-the-clock managed detections and response service for proactive threat monitoring."

4.     Because the individually identifiable medical information and other personal identifying information of Plaintiff and the Class was subject to unauthorized access and viewing by at least one "unauthorized third party" and in violation of the Act, Plaintiff, individually and on behalf of all others similarly situated, seeks from Defendants nominal damages in the amount of one thousand dollars ($1,000) for each violation under Civil Code §56.36(b)(1) and actual damages, according to proof, for each violation pursuant to Civil Code § 56.36(b)(2). Further, because Plaintiff also alleges Defendants' conduct violates Business & Professions Code §§ 17200, *et seq*., Plaintiff, individually and on behalf of others similarly situated, seeks injunctive relief and restitution from Defendants under Business and Professions Code § 17203.

5.     This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter, and therefore class certification is appropriate in this matter.

**JURISDICTION AND VENUE**

6.      In its Notice of Removal (ECF 1), NETGAIN stated that it was removing this action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California on the basis of original federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453. Specifically, NETGAIN asserted that it removed this action under 28 U.S.C. § 1444(c) based upon the Court's original federal jurisdiction over Plaintiff's claims under CAFA. 28 U.S.C. §§ 1332 (a)(1), (d); ECF 1, ¶4.

7.      In its Notice of Removal (ECF 1), NETGAIN asserted that venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c). ECF 1, ¶16. Venue is also proper in this Court because Defendants have obtained medical information of Plaintiff and the Class in the transaction of business in the State of California and in this judicial district, which has caused both obligations and liability of Defendants to arise in the State of California and in this judicial district.

8.      Further, this action originally was brought in the Superior Court of the State of California for the County of San Diego, which is located within the United States District Court for the Southern District of California. 28 U.S.C. § 84(c). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); ECF 1, ¶17.

**PARTIES**

**A.      PLAINTIFF**

9.      Plaintiff James Jackson, previously proceeding pseudonymously as "John Doe," is and was at all times relevant to this action a resident of the State of California and citizen of the State of California.  At all times relevant to this action, Plaintiff was a patient of, received medical treatment and diagnosis from, and provided his personal information, including his name, address, date of birth, social

security number, phone number and email address to, Neighborhood Healthcare ("NH").  At all times relevant to this action, NH was a provider of health care and employed persons located in the County of San Diego and in this judicial district. On April 8, 2021, NH caused a form letter, entitled "**Notice of Data Breach**," dated April 8, 2021, signed by  Rakesh Patel, "CEO, Neighborhood Healthcare," to be submitted to the Attorney General of the State of California, and identified the Data Breach as occurring on "November 24, 2020" and "December 3, 2020." In its breach notice, NH stated that "On November 24, 2020, Netgain became aware of a security incident that involved unauthorized access to portions of the Netgain environment and Netgain client environments and began taking steps to investigate this incident," that "on December 3, 2020, the attacker launched a ransomware attack against Netgain, encrypting a subset of files owned by Netgain and Netgain's clients and disrupting Netgain's operations," and "Neighborhood Healthcare learned of the ransomware attack on December 3, 2020," and "Netgain provided a set of files to Neighborhood Healthcare that Netgain believed were impacted by the attackers. Those files came from a Neighborhood Healthcare server accessible by the Netgain environment." On such information and belief, Plaintiff believes and alleges that either NETGAIN or NH or both informed CCC doing business as HCP of the Data Breach on December 3, 2020. Subsequently,, Plaintiff received a letter addressed to him, sent on Defendant Health Center Partners of Southern California's behalf, entitled "**Notice of Data Breach**," dated April 12, 2021, signed by Henry Tuttle, President & Chief Executive Officer, Health Center Partners of Southern California, informing him, in part, of "a recent data security incident experienced by Netgain Technology, LLC ('Netgain'), the IT service provider for Health Center Partners of Southern California ('HCP')" and stating, in part, "HCP supports community health centers in a variety of ways, including collaborative grant-funded programs and services for Neighborhood Healthcare" and "**What Happened:** Netgain recently informed HCP that it had experienced a data security incident that involved systems

containing HCP data.... According to Netgain, in late September 2020, an unauthorized third party gained access to Netgain's digital environment, and between October 22, 2020 to December 3, 2020, the unauthorized third party obtained certain files containing HCP data. Netgain stated that it paid an undisclosed amount to the attacker in exchange for assurances that the attacker will delete all copies of this data and that it will not publish, sell, or otherwise disclose the data.... The information involved varies depending on the individual but may include the following: name, address, date of birth, diagnosis/treatment information and treatment cost information.  Once we learned that HCP data may have been involved in the incident, we worked with our cybersecurity experts to review the impacted files and identify the individuals whose information was contained in such files so that we may notify such individuals. Our investigation revealed that the impacted files contained your personal information." As a result of his receipt of such letter from CCC doing business as HCP, Plaintiff reasonably fears that disclosure and/or release of his medical information created, maintained, preserved and/or stored on Defendants' computer networks could subject his to harassment or abuse.

**B.    DEFENDANTS**

10.    Defendant COUNCIL OF COMMUNITY CLINICS (or "CCC"), previously identified as Doe Defendant No. 1, is a business entity doing business in the State of California, with its principal business office located at 3710 Ruffin Road, San Diego, CA 92123.  Based upon a document alleged to have been filed with the San Diego Recorder/County Clerk, Plaintiff believes and alleges that CCC filed a fictitious business name registration on 12/16/2020 identifying Defendant Health Center Partners of Southern California ("HCP") and Health Center Partners as fictitious business names of CCC; and such registration will expire on 12/16/2025. On or about April 12, 2021, CCC, doing business as HCP, caused a form letter sent on its behalf in its fictitious business name HCP, entitled "**Notice of Data Breach**," dated April 12, 2021, signed by Henry Tuttle, "President & Chief Executive Officer,

Health Center Partners of Southern California," an exemplar of which is attached hereto as **Exhibit A**, to be submitted to the Attorney General of the State of California and to be mailed to Plaintiff and the Class.  In such breach notice, CCC doing business HCP informed Plaintiff, in part, of "a recent data security incident experienced by Netgain Technology, LLC ('Netgain'), the IT service provider for Health Center Partners of Southern California ('HCP')" and stating, in part, "HCP supports community health centers in a variety of ways, including collaborative grant-funded programs and services for Neighborhood Healthcare" and "**What Happened:** Netgain recently informed HCP that it had experienced a data security incident that involved systems containing HCP data.... According to Netgain, in late September 2020, an unauthorized third party gained access to Netgain's digital environment, and between October 22, 2020 to December 3, 2020, the unauthorized third party obtained certain files containing HCP data. Netgain stated that it paid an undisclosed amount to the attacker in exchange for assurances that the attacker will delete all copies of this data and that it will not publish, sell, or otherwise disclose the data.... The information involved varies depending on the individual but may include the following: name, address, date of birth, diagnosis/treatment information and treatment cost information.  Once we learned that HCP data may have been involved in the incident, we worked with our cybersecurity experts to review the impacted files and identify the individuals whose information was contained in such files so that we may notify such individuals. Our investigation revealed that the impacted files contained your personal information." At all times relevant to this action, CCC doing business as HCP was and is a "business" within the meaning of Civil Code § 1798.140(c)(1), owns or licenses computerized data which includes Plaintiff's and the Class' personal information, within the meaning of Civil Code § 1798.82(h), collected Plaintiff's and the Class' personal information within the meaning of Civil Code § 1798.81.5(d)(1)(A).

11.     At all times relevant to this action, Defendant Netgain Technology, LLC ("NETGAIN"), previously identified as Doe Defendant No. 2, was a business entity doing business in the State of California, with a principal business office located at 5353 Mission Center Road, Suite 202, San Diego, CA 92108.  At all times relevant to this action, NETGAIN was and is NH's and/or HCP's third-party vendor. On March 24, 2021, NETGAIN posted on its website a blog, entitled "What we learned as a ransomware victim – so you don't become one," which stated, in part, "In our case, late last year, Netgain was the victim of a criminal ransomware attack…. to become a victim of such an attack is both humbling and galvanizing…. we identified additional opportunities to strengthn our security posture in a continuous journey with an ongoing commitment to ensure this remains top-of-mind.  As part of our incident response, we have implemented a number of these identified enhancements to our security posture and have continued to progress a multipronged approach.  We've deployed new tools, revised policies and enforcement procedures, and implemented an advanced around-the-clock managed detections and response service for proactive threat monitoring."

C.     NOMINAL THIRD PARTY

12.     At all times relevant to this action, Neighborhood Healthcare ("NH") is a California corporation, is registered to do business and does business in the State of California (CA Corp. No. C0667935), with its principal business office located at 1540 E. Valley Parkway, Escondido CA 92026.  On or about April 8, 2021, NH caused a form letter sent on its behalf, entitled "**Notice of Data Breach**," dated April 8, 2021, signed by Rakesh Patel, CEO, Neighborhood Healthcare, an exemplar of which is attached hereto as **Exhibit B**, to be submitted to the Attorney General of the State of California.  In NH's form letter, entitled "**Notice of Data Breach**," dated April 8, 2021, signed by Rakesh Patel, CEO, NH stated, in part, "We are writing to make you aware of an issue brought to our attention by our former third-party hosting provider, Netgain. Netgain is a leading cloud hosting and managed services provider.

Neighborhood Healthcare used Netgain to host some Neighborhood Healthcare files. **What Happened** On November 24, 2020, Netgain became aware of a security incident that involved unauthorized access to portions of the Netgain environment and Netgain client environments and began taking steps to investigate this incident. But, on December 3, 2020, the attacker launched a ransomware attack against Netgain, encrypting a subset of files owned by Netgain and Netgain's clients and disrupting Netgain's operations. In response, Netgain took additional measures to contain the threat and address the issue. Netgain's technical teams worked closely with third-party experts to remove the threat in the impacted environments and confirm that client and internal systems are protected. Neighborhood Healthcare learned of the ransomware attack on December 3, 2020. At that time, Neighborhood Healthcare had no reason to believe that the protected health information ("PHI") of our patients had been impacted in the incident.  However, on January 7, 2021, Netgain informed Neighborhood Healthcare that some information including, potentially, some files containing patient PHI may have been impacted in the incident. Netgain could not confirm, at that time, what records may have been impacted in the incident. It was not until January 21, 2021, that Netgain provided a set of files to Neighborhood Healthcare that Netgain believed were impacted by the attackers. Those files came from a Neighborhood Healthcare server accessible by the Netgain environment. Since that time, Neighborhood Healthcare has worked to review those records, to identify individuals impacted, conduct an investigation into the incident with the assistance outside experts, and to transmit this letter to you with its accompanying protective measures. On March 16, 2021, Neighborhood Healthcare determined that the impacted files included some of your information. **What Information Was Involved** The information involved may have included some of the following: your name, date of birth, address, Social Security Number and information about the care that you received from Neighborhood Healthcare such as insurance coverage information, physician you saw, and treatment codes." An

exemplar of Defendant Neighborhood Healthcare's "**Notice of Data Breach**" form letter submitted to the Attorney General of the State of California is attached hereto as **Exhibit B**. At all times relevant to this action, NH was and is a provider of health care and employed and employs persons located in the County of San Diego and in this judicial district.

**D.   AGENCY/AIDING AND ABETTING**

13.   At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

14.   Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

<u>**FACTUAL ALLEGATIONS**</u>

15.   On its website, CCC doing business as HCP represents that "[o]ur members collectively serve 917,000 unduplicated patients each year, for 3.9 million patient visits each year, at 160 practice sites across San Diego, Riverside, Imperial counties."[2] Plaintiff alleges on information and belief that at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020,

---

[2] (https://hcpsocal.org/members/)

CCC's/HCP's referred to "members," including to NH and other providers of health care, utilize CCC doing business as HCP to perform services for them or on their behalf.  In order to for CCC doing business as HCP to perform such services for them or on their behalf, CCC's/HCP's referred to "members," including to NH and other providers of health care, disclosed and/or released protective health information (PHI), including Plaintiff's and the Class' medical information, in electronic and physical form, in possession of or derived from CCC's/HCP's referred to "members," including to NH and other providers of health care, regarding Plaintiff's and the Class' medical history, mental or physical condition, or treatment, to CCC doing business as HCP, pursuant to   business associate agreements.   Such medical information included or contained an element of personal identifying information sufficient to allow identification of Plaintiff and the Class, such as their names, date of birth, addresses, medical record numbers, insurance provider, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals their identity.  As a result, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP possessed Plaintiff's and the Class' medical information, in electronic and physical form, in possession of or derived from Defendants regarding their medical history, mental or physical condition, or treatment.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of Plaintiff and the Class, such as their names, date of birth, addresses, medical record numbers, insurance provider, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals their identity.  Therefore, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP maintained and continues to maintain "medical information,"

within the meaning of Civil Code § 56.05(i), of Plaintiff and the Class, each of which are "patients" within the meaning of Civil Code § 56.05(l).

16.     Plaintiff alleges on information and belief that at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP disclosed and/or released Plaintiff's and the Class' medical information, in electronic and physical form, in possession of or derived from CCC's/HCP's referred to "members," including to NH and other providers of health care, regarding Plaintiff's and the Class' medical history, mental or physical condition, or treatment, to NETGAIN and caused NETGAIN to host, create, maintain, preserve, and store Plaintiff's and the Class members' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) in a digital environment for CCC doing business as HCP located on NETGAIN server within NETGAIN's digital environment, that CCC doing business as HCP had received from CCC's/HCP's referred to "members," including to NH and other providers of health care, pursuant to the business associate agreements with CCC's/HCP's referred to "members," including to NH and other providers of health care, without Plaintiff's and the Class' written authorization in accordance with Civil Code § 56.11.  As a result, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, NETGAIN possessed Plaintiff's and the Class' medical information, in electronic and physical form, in possession of or derived from Defendants regarding Plaintiff's and the Class' medical history, mental or physical condition, or treatment.   Such medical information included or contained an element of personal identifying information sufficient to allow identification of Plaintiff and the Class, such as their names, date of birth, addresses, medical record numbers, insurance provider, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals their identity.   Therefore, Plaintiff alleges on information and belief that at all times

relevant to this action, including the period from October 22, 2020 to December 3, 2020, NETGAIN maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(i), of Plaintiff and the Class, each of which are "patients" within the meaning of Civil Code § 56.05(l).  Further, Plaintiff alleges on information and belief that at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, NETGAIN actually viewed Plaintiff's and the Class' "medical information," within the meaning of Civil Code § 56.05(i). Specifically, Plaintiff received a letter addressed to him, sent on behalf of CCC doing business as HCP, entitled "**Notice of Data Breach**," dated April 12, 2021, signed by Henry Tuttle, President & Chief Executive Officer, Health Center Partners of Southern California, informing him, in part, of "a recent data security incident experienced by Netgain Technology, LLC ('Netgain'), the IT service provider for Health Center Partners of Southern California ('HCP')" and stating, in part, "HCP supports community health centers in a variety of ways, including collaborative grant-funded programs and services for Neighborhood Healthcare" and that "According to Netgain, in late September 2020, an unauthorized third party gained access to Netgain's digital environment, and between October 22, 2020 to December 3, 2020, the unauthorized third party obtained certain files containing HCP data. Netgain stated that it paid an undisclosed amount to the attacker in exchange for assurances that the attacker will delete all copies of this data and that it will not publish, sell, or otherwise disclose the data. In addition, Netgain's cybersecurity experts conducted regular dark web scans for the impacted files.... The information involved varies depending on the individual but may include the following: name, address, date of birth, diagnosis/treatment information and treatment cost information.  Once we learned that HCP data may have been involved in the incident, we worked with our cybersecurity experts to review the impacted files and identify the individuals whose information was contained in such files so that we may notify such individuals. Our investigation revealed that the impacted files contained your

personal information." As a result of his receipt of such Data Breach letter from CCC
doing business as HCP, Plaintiff alleges on information and belief that at all times
relevant to this action, including the period from October 22, 2020 to December 3,
2020, NETGAIN actually viewed Plaintiff's and the Class' "medical information,"
within the meaning of Civil Code § 56.05(i), because NETGAIN could not have
conducted regular dark web scans for the impacted files without actually viewing
such information. Additionally, Plaintiff alleges on information and belief that at all
times relevant to this action, including the period from October 22, 2020 to December
3, 2020, NETGAIN actually viewed Plaintiff's and the Class' "medical information,"
within the meaning of Civil Code § 56.05(i), because on April 8, 2021, NH caused a
form letter, entitled "**Notice of Data Breach**," dated April 8, 2021, signed by  Rakesh
Patel, "CEO, Neighborhood Healthcare," to be submitted to the Attorney General of
the State of California, and identified the Data Breach as occurring on "November 24,
2020" and "December 3, 2020." In its breach notice, NH stated that "On November
24, 2020, Netgain became aware of a security incident that involved unauthorized
access to portions of the Netgain environment and Netgain client environments and
began taking steps to investigate this incident," that "on December 3, 2020, the
attacker launched a ransomware attack against Netgain, encrypting a subset of files
owned by Netgain and Netgain's clients and disrupting Netgain's operations," and
"Neighborhood Healthcare learned of the ransomware attack on December 3, 2020,"
and "Netgain provided a set of files to Neighborhood Healthcare that Netgain
believed were impacted by the attackers. Those files came from a Neighborhood
Healthcare server accessible by the Netgain environment." On such information and
belief, Plaintiff believes and alleges that either NETGAIN or NH or both informed
CCC doing business as HCP of the Data Breach on December 3, 2020. As a result of
NH's breach notice, Plaintiff alleges on information and belief that at all times
relevant to this action, including the period from October 22, 2020 to December 3,
2020, NETGAIN actually viewed Plaintiff's and the Class' "medical information,"

within the meaning of Civil Code § 56.05(i), because NETGAIN could not have became aware of the Data Breach on November 24, 2020 of unauthorized access to NH's client environment without actually viewing such information, could not have informed Neighborhood Healthcare of the Data Breach on December 3, 2020 without actually viewing such information, and could not have provided a set of files from "a Neighborhood Healthcare server accessible by the Netgain environment" to NH that Netgain believed were impacted by the unauthorized person(s) or "attackers" without actually viewing such information.

17.   At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.06(a), CCC doing business as HCP qualifies as a provider of health care because it created, maintained, preserved, and stored records of the care, products and services that Plaintiff and the Class members received in the State of California from CCC's/HCP's over 16 member community health centers, 160 member practice sites, 917,000 patients served, and/or other providers of health care, health care service plans, pharmaceutical companies, and contractors, as defined by the Act, is and was organized for the purpose of maintaining medical information, within the meaning of Civil Code § 56.05(i), in order to make the information available to Plaintiff and the Class members or to a provider of health care at the request of Plaintiff and the Class members or a provider of health care, for purposes of allowing Plaintiff and the Class members to manage their information, or for the diagnosis and treatment of Plaintiff and the Class members.

18.   Alternatively, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.06(b), CCC doing business as HCP qualifies as a provider of health care because it offers software and hardware to consumers (including CCC's/HCP's referred to "members," including to NH and other providers of health care) (1) in order to make the information available to an individual or a provider of health care at the request of the

individual or a provider of health care, (2) for purposes of allowing the individual to manage his or his information, and (3) for the diagnosis, treatment, or management of a medical condition of the individual.

19. Alternatively, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.05(d), CCC doing business as HCP, as an entity that is a medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization, and is not a health care service plan or provider of health care to Plaintiff and the Class members, is and was a "contractor" under Civil Code § 56.05(d).

20. Alternatively, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.13, CCC doing business as HCP is and was a recipient of medical information of Plaintiff and the Class members pursuant to an authorization as provided by the Act or pursuant to the provisions of subdivision (c) of Section 56.10 and was prohibited from further disclosing that medical information except in accordance with a new authorization that meets the requirements of Section 56.11, or as specifically required or permitted by other provisions of this chapter or by law.

21. Alternatively, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.245, CCC doing business as HCP is and was a recipient of medical information of Plaintiff and the Class members pursuant to an authorization as provided by the Act, and was prohibited from further disclosing such medical information unless in accordance with a new authorization that meets the requirements of Section 56.21, or as specifically required or permitted by other provisions of this chapter or by law.

22. Additionally, at all times relevant to this action, including prior to the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.26(a), CCC doing business as HCP is and was an entity engaged in the business of furnishing administrative services to programs that provide payment for health care

services to Plaintiff and the Class, and was prohibited from knowingly using, disclosing or permitting its employees or agents to use or disclose Plaintiff's and the Class members' medical information possessed in connection with performing administrative functions for a program, except as reasonably necessary in connection with the administration or maintenance of the program, or as required by law, or with an authorization.

23.     As a provider of health care, a contractor, and/or other authorized recipient of medical information, CCC doing business as HCP is required by the Act to ensure that medical information regarding Plaintiff and the Class is not disclosed or disseminated or released without patients' authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.10, 56.13, 56.245, 56.26, 56.101 and 56.36.

24.     At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.06(a), NETGAIN qualifies as a provider of health care because it created, maintained, preserved, and stored records of the care, products and services that Plaintiff and the Class members received in the State of California from NH and/or other providers of health care, health care service plans, pharmaceutical companies, and contractors, as defined by the Act, is and was organized for the purpose of maintaining medical information, within the meaning of Civil Code § 56.05(j), in order to make the information available to Plaintiff and the Class members or to a provider of health care at the request of Plaintiff and the Class members or a provider of health care, for purposes of allowing Plaintiff and the Class members to manage their information, or for the diagnosis and treatment of Plaintiff and the Class members.

25.     Alternatively, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.06(b), NETGAIN qualifies as a provider of health care because it offers software and hardware to consumers (NH and HCP included) (1) in order to make the information

available to an individual or a provider of health care at the request of the individual or a provider of health care, (2) for purposes of allowing the individual to manage his or her information, and (3) for the diagnosis, treatment, or management of a medical condition of the individual.

26.    Alternatively, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.13, NETGAIN is and was a recipient of medical information of Plaintiff and the Class members pursuant to an authorization as provided by the Act or pursuant to the provisions of subdivision (c) of Section 56.10 and was prohibited from further disclosing that medical information except in accordance with a new authorization that meets the requirements of Section 56.11, or as specifically required or permitted by other provisions of this chapter or by law.

27.    Alternatively, at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, pursuant to Civil Code § 56.245, NETGAIN is and was a recipient of medical information of Plaintiff and the Class members pursuant to an authorization as provided by the Act, and was prohibited from further disclosing such medical information unless in accordance with a new authorization that meets the requirements of Section 56.21, or as specifically required or permitted by other provisions of this chapter or by law.

28.    As a provider of health care and/or other authorized recipient of personal and confidential medical information, NETGAIN is required by the Act to ensure that medical information regarding Plaintiff and the Class is not disclosed or disseminated or released without patients' authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.10, 56.13, 56.245, 56.26, 56.101 and 56.36.

29.    At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP created, maintained, preserved, and stored records of the care, services and products, including the names,

addresses, dates of birth, diagnosis/treatment information and treatment cost information of Plaintiff and the Class (all of which constitutes medical information, as that term is defined and set forth in the Act), that Plaintiff and other Class members received in the State of California from CCC's/HCP's referred to "members," including to NH and other providers of health care, on its computer networks.

30.     As a result, on or before October 30, 2020, Defendants possessed Plaintiff's and the Class' medical information, in electronic and physical form, in possession of or derived from Defendants regarding their medical history, mental or physical condition, or treatment.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of Plaintiff and the Class, such as their names, addresses, dates of birth, social security numbers, phone numbers and/or email addresses, or other information that, alone or in combination with other publicly available information, reveals their identity.

31.     As providers of health care, contractors, and/or other recipients of medical information, Defendants are required by the Act to ensure that medical information regarding a patient is not disclosed or disseminated or released without their patients' authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.10, 56.26, 56.36, and 56.101.

32.     As providers of health care, contractors, and/or other recipients of medical information, Defendants are required by the Act not to disclose medical information regarding a patient without first obtaining an authorization[3] under Civil Code §§ 56.10 and 56.26.

---

[3] An "authorization" is defined under the Act as obtaining permission in accordance with Civil Code § 56.11.  Under Civil Code § 56.11, an authorization for the release of medical information is valid only if it:
(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

33.     As providers of health care, contractors, and/or other recipients of medical information, Defendants are required by the Act to create, maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information contained therein under Civil Code § 56.101(a).

34.     As providers of health care, contractors, and/or other recipients of medical information, Defendants are required by the Act to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in its possession under Civil Code § 56.101(b)(1)(A).

---

(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

(c) Is signed and dated by one of the following:

(1) The patient. A patient who is a minor may only sign an authorization for the release of medical information obtained by a provider of health care, health care service plan, pharmaceutical company, or contractor in the course of furnishing services to which the minor could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).

(2) The legal representative of the patient, if the patient is a minor or an incompetent. However, authorization may not be given under this subdivision for the disclosure of medical information obtained by the provider of health care, health care service plan, pharmaceutical company, or contractor in the course of furnishing services to which a minor patient could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).

(3) The spouse of the patient or the person financially responsible for the patient, where the medical information is being sought for the sole purpose of processing an application for health insurance or for enrollment in a nonprofit hospital plan, a health care service plan, or an employee benefit plan, and where the patient is to be an enrolled spouse or dependent under the policy or plan.

(4) The beneficiary or personal representative of a deceased patient.

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization.

35.    As providers of health care, contractors, and/or other recipients of medical information, Defendants are required by the Act to take appropriate preventive actions to protect the confidential information or records against release consistent with Defendants' obligations under the Act, under Civil Code § 56.36(e)(2)(E), or other applicable state law, and the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) (HIPAA) and all HIPAA Administrative Simplification Regulations in effect on January 1, 2012, contained in Parts 160, 162, and 164 of Title 45 of the Code of Federal Regulations, and Part 2 of Title 42 of the Code of Federal Regulations, including, but not limited to, all of the following:

    i.   Developing and implementing security policies and procedures.

    ii.   Designating a security official who is responsible for developing and implementing its security policies and procedures, including educating and training the workforce.

    iii.   Encrypting the information or records, and protecting against the release or use of the encryption key and passwords, or transmitting the information or records in a manner designed to provide equal or greater protections against improper disclosures.

36.    At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP created, maintained, preserved, and stored Plaintiff's and the Class members' medical information in an un-encrypted format.

37.    At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP created, maintained, preserved, stored, disclosed and/or delivered Plaintiff's and the Class members' medical information to NETGAIN, and caused NETGAIN to host, create, maintain, preserve, and store Plaintiff's and the Class members' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost

information) in a digital environment for CCC doing business as HCP located on NETGAIN server within NETGAIN's digital environment.  At all times relevant to this action, CCC doing business as HCP did not obtain written authorization from the Plaintiff and the Class prior to creating, maintaining, preserving, storing, disclosing and/or delivering Plaintiff's and the Class members' medical information to NETGAIN or prior to causing NETGAIN to host, creat, maintain, preserv, and store Plaintiff's and the Class members' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) in a digital environment for CCC doing business as HCP located on NETGAIN server within NETGAIN's digital environment.  Furthermore, CCC's/HCP's disclosure of and/or delivery of Plaintiff's and the Class members' medical information to NETGAIN was not permissible without written authorization from the Plaintiff and the Class or under any exemption under Civil Code § 56.10(c).

38.    By law, the HIPAA Privacy Rule applies only to covered entities, e.g. health care providers. However, most health care providers do not carry out all of their health care activities and functions by themselves. Instead, they often use the services of a variety of other persons or businesses. The Privacy Rule allows covered providers to disclose protected health information (PHI) to these "business associates" if the providers obtain assurances that the business associates will use the PHI only for the purposes for which it was engaged by the covered entity, the business associates will protect the privacy and provide for the security of the PHI disclosed to or used by business associates, the business associates will safeguard the PHI from misuse, and the business associates will help the covered entity comply with some of the covered entity's duties under the Privacy Rule. Covered entities may disclose PHI to an entity in its role as a business associate only to help the covered entity carry out its health care functions – not for the business associate's independent use or purposes, except as needed for the proper management and administration of the business associate. The Privacy Rule requires that a covered entity obtain

assurances from its business associate that the business associate will protect the privacy and provide for the security of the PHI disclosed to or used by the business associate and appropriately safeguard the PHI it receives or creates on behalf of the covered entity. Covered entities and business associates are required to document these assessments and all decisions.  The satisfactory assurances must be in writing, whether in the form of a contract or other agreement between the covered entity and the business associate, and requires a covered entity to obtain satisfactory assurances, on an ongoing basis, that the business associate is complying, on an ongoing basis, with cybersecurity and information security standards, and appropriately safeguarding the PHI it receives or creates on behalf of the covered entity.

39.    When hiring and monitoring a service provider or business associate such as NETGAIN, CCC doing business as HCP knew or should have known that they had a duty to inquire about potential service providers' and business associates' cybersecurity programs and how such programs are maintained.  CCC doing business as HCP knew or should have known that they had a duty to compare potential service providers' and business associates' cybersecurity programs to the industry standards adopted by other healthcare providers, and should evaluate potential service providers' track records in the industry by reviewing public information about data security incidents and litigation. CCC doing business as HCP knew or should have known that they had a duty to also ask potential service providers and business associates about whether they have experienced any cybersecurity incidents and how such incidents were handled, as well as whether the potential service provider has an insurance policy in place that would cover losses caused by cybersecurity breaches (including losses caused by internal and external threats). CCC doing business as HCP knew or should have known that they had a duty to review service provider and business associate contracts to ensure that the contracts require the service providers to comply, on an ongoing basis, with cybersecurity and information security standards (and avoid contract provisions that limit service providers' responsibility

for cybersecurity and information technology breaches). CCC doing business as HCP knew or should have known that they had a duty to obtain satisfactory assurances that their service providers and business associates were complying, on an ongoing basis, with cybersecurity and information security standards, and were properly creating, maintaining, preserving, and/or storing the PHI it receives or creates on behalf of HCP, including the confidential, medical and personal identifying information of Plaintiff and the Class.  Finally, CCC doing business as HCP knew or should have known that they had a duty to pay particular attention to contract terms relating to confidentiality, the use and sharing of information, notice by the vendor of cybersecurity risk assessments and audit reports, cybersecurity breaches and records retention and destruction.

40.    Plaintiff alleges on information and belief that CCC's/HCP's disclosure of Plaintiff's and the Class' medical information to NETGAIN was a violation of Civil Code § 56.10, and not permissible under the Privacy Rule or any exemption under Civil Code § 56.10(c).  In response to an U.S. Department of Health & Human Services' Office for Civil Rights investigation, NETGAIN has been unable to locate a requested executed business associate agreement. On December 13, 2021, Plaintiff asked HCP's attorney of record for a copy of the business associate agreement between HCP and NETGAIN, and in response, he stated refused.  In contrast, NH produced a copy of a business associate agreement between NH and HCP.  Upon such information and belief, Plaintiff alleges on information and belief that, that at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC's/HCP's disclosure of Plaintiff's and the Class' medical information to NETGAIN was a violation of under Civil Code § 56.10, and not permissible under the Privacy Rule or any exemption under Civil Code § 56.10(c), because CCC doing business as HCP did not have a business associate agreement with NETGAIN or any agreement that met the requirements of the Privacy Rule or any exemption under Civil Code § 56.10(c).  In the alternative, Plaintiff alleges on information and belief

that CCC's/HCP's disclosure of Plaintiff's and the Class' medical information to NETGAIN was a violation of under Civil Code § 56.10, and not permissible under the Privacy Rule or any exemption under Civil Code § 56.10(c), because even if CCC doing business as HCP had entered in a business associate agreement with NETGAIN in place at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, any such agreement did not meet the requirements of the Privacy Rule or any exemption under Civil Code § 56.10(c), because any such agreement violated its business associate agreement with CCC's/HCP's referred to "members," including to NH and other providers of health care, and/or does not meet the requirements of the Privacy Rule or any exemption under Civil Code § 56.10(c), since any such agreement contained provisions that (i) purport or seek to limit NETGAIN's financial responsibility for cybersecurity and information technology breaches, (ii) failed to obtain reasonable assurances and failed to monitor and conduct assessments of NETGAIN to verify that NETGAIN was properly creating, maintaining, preserving, and/or storing the PHI it receives or creates on behalf of CCC doing business as HCP, including the confidential, medical and personal identifying information of Plaintiff and the Class, NETGAIN would comply with HIPAA privacy regulations and to follow guidelines and policies to maintain the privacy, confidentiality, including by encryption, and otherwise reasonably protect Plaintiff's and the Class' medical information from disclosure and/or release to at least one "unauthorized third party" prior to and after CCC's/HCP's disclosure and/or release of Plaintiff's and the Class members' medical information to NETGAIN; (iii) failed to prohibit the use and disclosure of PHI other than as required by the Privacy Rule and the Act; (iv) failed to establish and act upon policies and procedures for protecting the privacy and security of PHI, including at a minimum contingency planning/backup and periodic security training, as required by the Privacy Rule and the Act; (v) failed to implement administrative, physical, and technical safeguards that meet or exceed industry-standards and appropriately protect the confidentiality,

integrity, and availability of the PHI that it creates, receives, maintains, or transmits on behalf of CCC doing business as HCP, as required by the HIPAA Rules, covering at a minimum those elements of the HIPAA Rules made directly applicable to NETGAIN or any of NETGAIN's subcontractors; (vi) failed to ensure that any of NETGAIN's subcontractors that creates, receives, maintains or transmits PHI on behalf of CCC doing business as HCP, agreed to the same restrictions and conditions that applies to CCC doing business as HCP with respect to such PHI as required by the Privacy Rule and the Act; and/or (vii) allowed the use and disclosure of the PHI that it creates, receives, maintains, or transmits on behalf of CCC doing business as HCP in ways that violated the Act; and accordingly, CCC's/HCP's disclosure and/or release of Plaintiff's and the Class' medical information to NETGAIN at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, was a violation of Civil Code § 56.10, and not permissible under the Privacy Rule or any exemption under Civil Code § 56.10(c).

41.     Additionally, Plaintiff alleges on information and belief that CCC doing business as HCP disclosed, in violation of Civil Code § 56.10, and released, in violation of Civil Code § 56.101, Plaintiff's and the Class' medical information to at least one "unauthorized third party," which was not permissible under the Privacy Rule or any exemption under Civil Code § 56.10(c).  At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, at least one "unauthorized third party gained access to Netgain's digital environment, and between October 22, 2020 to December 3, 2020, the unauthorized third party obtained certain files" containing Plaintiff's and the Class' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) that was located on a NETGAIN server in an un-encrypted format, as represented in CCC's/HCP's "**Notice of Data Breach**" form letter submitted to the Attorney General of the State of California and mailed to Plaintiff and the Class, attached hereto as **Exhibit A**.  Specifically, Plaintiff received a letter addressed to

him, sent on behalf of CCC doing business as HCP, entitled "**Notice of Data Breach**," dated April 12, 2021, signed by Henry Tuttle, President & Chief Executive Officer, Health Center Partners of Southern California, informing him, in part, of "a recent data security incident experienced by Netgain Technology, LLC ('Netgain'), the IT service provider for Health Center Partners of Southern California ('HCP')" and stating, in part, "HCP supports community health centers in a variety of ways, including collaborative grant-funded programs and services for Neighborhood Healthcare" and that "According to Netgain, in late September 2020, an unauthorized third party gained access to Netgain's digital environment, and between October 22, 2020 to December 3, 2020, the unauthorized third party obtained certain files containing HCP data. Netgain stated that it paid an undisclosed amount to the attacker in exchange for assurances that the attacker will delete all copies of this data and that it will not publish, sell, or otherwise disclose the data.... The information involved varies depending on the individual but may include the following: name, address, date of birth, diagnosis/treatment information and treatment cost information.  Once we learned that HCP data may have been involved in the incident, we worked with our cybersecurity experts to review the impacted files and identify the individuals whose information was contained in such files so that we may notify such individuals. Our investigation revealed that the impacted files contained your personal information." As a result of his receipt of such Data Breach letter from CCC doing business as HCP, Plaintiff alleges on information and belief that at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, at least one "unauthorized third party" actually viewed Plaintiff's and the Class' "medical information," within the meaning of Civil Code § 56.05(i), because the "unauthorized third party" gained access to Netgain's digital environment, containing Plaintiff's and the Class' un-encrypted "medical information," within the meaning of Civil Code § 56.05(i), in late September 2020 and between October 22, 2020 to December 3, 2020, the "unauthorized third party" could not have gained

assess to Netgain's digital environment "in late September 2020 and between October 22, 2020 to December 3, 2020" without being given administrative access to Netgain's digital environment, containing Plaintiff's and the Class' un-encrypted "medical information," within the meaning of Civil Code § 56.05(i), the "unauthorized third party" could not have conducted the attack, encrypted a subset of files and and negotiated and received payment from NETGAIN without actually viewing such information. Additionally, Plaintiff alleges on information and belief that at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, at least one "unauthorized third party" actually viewed Plaintiff's and the Class' "medical information," within the meaning of Civil Code § 56.05(i), because on April 8, 2021, NH caused a form letter, entitled "**Notice of Data Breach**," dated April 8, 2021, signed by Rakesh Patel, "CEO, Neighborhood Healthcare," to be submitted to the Attorney General of the State of California, and identified the Data Breach as occurring on "November 24, 2020" and "December 3, 2020." In its breach notice, NH stated that "On November 24, 2020, Netgain became aware of a security incident that involved unauthorized access to portions of the Netgain environment and Netgain client environments and began taking steps to investigate this incident," that "on December 3, 2020, the attacker launched a ransomware attack against Netgain, encrypting a subset of files owned by Netgain and Netgain's clients and disrupting Netgain's operations," and "Neighborhood Healthcare learned of the ransomware attack on December 3, 2020," and "Netgain provided a set of files to Neighborhood Healthcare that Netgain believed were impacted by the attackers. Those files came from a Neighborhood Healthcare server accessible by the Netgain environment." As a result of NH's breach notice, Plaintiff alleges on information and belief that at all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, at least one "unauthorized third party" actually viewed Plaintiff's and the Class' "medical information," within the meaning of Civil Code § 56.05(i), because the "unauthorized third party" gained access to Netgain's digital

environment, containing Plaintiff's and the Class' un-encrypted "medical information," within the meaning of Civil Code § 56.05(i), in late September 2020 and between October 22, 2020 to December 3, 2020, and the "unauthorized third party" could not have conducted the attack, encrypted a subset of files and negotiated and received payment from NETGAIN without actually viewing such information, and NETGAIN provided a set of files from "a Neighborhood Healthcare server accessible by the Netgain environment" to NH that NETGAIN believed were actually viewed by the unauthorized person(s) or "attackers."

42.   Additionally, Plaintiff alleges on information and belief that because of phishing incident, one or more "unauthorized third party" was given administrative access and did in fact access on more than occasion CCC's/HCP's digital environment located on a NETGAIN server within NETGAIN's digital environment containing Plaintiff's and the Class' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) stored, created, and/or maintained in an un-encrypted format, by one or more employees and/or subcontractors of Defendants, between October 22, 2020 to December 3, 2020.  Plaintiff further alleges on information and belief that between October 22, 2020 to December 3, 2020, one or more "unauthorized third party" viewed and performed analysis of information on CCC's/HCP's digital environment located on a NETGAIN server within NETGAIN's digital environment containing Plaintiff's and the Class' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) stored, created, and/or maintained in an un-encrypted format, using the given administrative access. Additionally, Plaintiff further alleges on information and belief that between October 22, 2020 to December 3, 2020, one or more "unauthorized third party" exfiltrated information from CCC's/HCP's digital environment located on a NETGAIN server within NETGAIN's digital environment containing Plaintiff's and the Class' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment

information and treatment cost information) stored, created, and/or maintained in an un-encrypted format, using the given administrative access.

43.     Defendants had the resources necessary to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in their possession, including requiring two-factor authentication to prevent access, viewing and exfiltration of information on CCC's/HCP's digital environment located on a NETGAIN server within NETGAIN's digital environment containing Plaintiff's and the Class' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) in an un-encrypted format by one or more "unauthorized third party," but neglected to adequately implement data security measures as required by HIPPA and the Act, despite their obligation to do so.

44.     Additionally, the risk of vulnerabilities in its computer and data systems of being exploited by an "unauthorized third party" trying to steal Plaintiff's and the Class' electronic personally identifying and medical information was foreseeable and/or known to Defendants.  The California Data Breach Report 2012-2015, issued in February 2016 by Attorney General, Kamala D. Harris, reported, "Malware and hacking presents the greatest threat, both in the number of breaches and the number of records breached" and "Social Security numbers and medical information – was breached than other data types."  Moreover, as Attorney General further reported, just because "[e]xternal adversaries cause most data breaches, [] this does not mean that organizations are solely victims; they are also stewards of the data they collect and maintain. People entrust businesses and other organizations with their data on the understanding that the organizations have a both an ethical and a legal obligation to protect it from unauthorized access. Neglecting to secure systems and data opens a gateway for attackers, who take advantage of uncontrolled vulnerabilities." Regarding encryption, Attorney General instructed in California Data Breach Report 2012-2015, "As we have said in the past, breaches of this type are preventable.

Affordable solutions are widely available: strong full-disk encryption on portable devices and desktop computers when not in use.[] Even small businesses that lack full time information security and IT staff can do this. They owe it to their patients, customers, and employees to do it now."

45.    More recently the HIPAA Journal posted on November 1, 2018 warned, "Healthcare organization[s] need to ensure that their systems are well protected against cyberattacks, which means investing in technologies to secure the network perimeter, detect intrusions, and block malware and phishing threats."

46.    Further, it also was foreseeable and/or known to Defendants that negligently creating, maintaining, preserving, and/or storing Plaintiff's and the Class' medical and personal identifying information, in electronic form, onto Defendants' computer networks in a manner that did not preserve the confidentiality of the information could have a devastating effect on them.  As reported in the California Data Breach Report 2012-2015, "There are real costs to individuals. Victims of a data breach are more likely to experience fraud than the general public, according to Javelin Strategy & Research. In 2014, 67 percent of breach victims in the U.S. were also victims of fraud, compared to just 25 percent of all consumers."

47.    To be successful, phishing relies on a series of affirmative acts by a company and its employees such as clicking a link, downloading a file, or providing sensitive information. Once criminals gained access to the email accounts of a company and its employees, the email servers communicated—that is, disclosed—the contents of those accounts to the criminals, including administrative access to computer networks.  "Phishing scams are one of the most common ways hackers gain access to sensitive or confidential information. Phishing involves sending fraudulent emails that appear to be from a reputable company, with the goal of deceiving recipients into either clicking on a malicious link or downloading an infected attachment, usually to steal financial or confidential information." (https://www.varonis.com/blog/ data-breach-statistics/). As posted on April 21, 2020,

THIRD AMENDED CLASS ACTION COMPLAINT

1  the FBI had issued a fresh warning [Alert Number MI-000122-MW] following an
2  increase in COVID-19 phishing scams targeting healthcare providers.

3        48.    At all times relevant to this action, including the period from October 22,
4  2020 to December 3, 2020, Defendants negligently created, maintained, preserved,
5  and/or stored Plaintiff's and the Class' medical information, including Plaintiff's and
6  the Class' names, addresses, dates of birth, diagnosis/treatment information and
7  treatment cost information, in electronic form, onto Defendants' computer networks
8  in a manner that did not preserve the confidentiality of the information, and
9  negligently failed to protect and preserve confidentiality of electronic medical
10  information of Plaintiff and the Class in their possession, as required by HIPPA and
11  the Act, and specifically, under Civil Code §§ 56.10(a), 56.26(a), 56.36(e)(2)(E),
12  56.101(a), and 56.101(b)(1)(A), and according to their written representations to
13  Plaintiff and the Class.

14        49.    Had Defendants taken such appropriate preventive actions, fix the
15  deficiencies in their data security systems and adopted security measures as required
16  by HIPPA and the Act from October 22, 2020 to December 3, 2020, Defendants
17  could have prevented Plaintiff's and the Class' electronic medical information within
18  Defendants' computer networks from being accessed, acquired, exfiltrated and
19  actually viewed by unauthorized third parties.

20        50.    At all times relevant to this action, including the period from October 22,
21  2020 to December 3, 2020, CCC doing business as HCP, by negligently creating,
22  maintaining, preserving, and storing the electronic medical information of Plaintiff
23  and the Class on NETGAIN's computer server, allowed Plaintiff's and the Class'
24  medical and personal identifying information to be accessed, acquired, exfiltrated and
25  actually viewed by at least one "unauthorized third party," without first obtaining an
26  authorization, constituting a disclosure in violation of Civil Code § 56.10(a).

27        51.    At all times relevant to this action, including the period from October 22,
28  2020 to December 3, 2020, CCC doing business as HCP, by negligently creating,

maintaining, preserving, and storing the electronic medical information of Plaintiff and the Class on NETGAIN's computer server, allowed Plaintiff's and the Class' medical and personal identifying information to be accessed, acquired, exfiltrated and actually viewed by at least one "unauthorized third party," without first obtaining an authorization, constituting a disclosure in violation of Civil Code § 56.26(a).

52.     At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP, by negligently creating, maintaining, preserving, and storing the electronic medical information of Plaintiff and the Class on NETGAIN's computer server, allowed Plaintiff's and the Class' medical and personal identifying information to be accessed, acquired, exfiltrated and actually viewed by at least one "unauthorized third party," constituting a release in violation of Civil Code § 56.101(a).

53.     At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC's/HCP's negligent failure to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class, on NETGAIN's computer server, allowed Plaintiff's and the Class' medical and personal identifying information to be accessed, acquired, exfiltrated and actually viewed by at least "one unauthorized third party," constituting a release in violation of Civil Code § 56.101(b)(1)(A).

54.     On or about April 12, 2021, CCC doing business as HCP caused a form letter, entitled "**Notice of Data Breach**," dated April 12, 2021, signed by Henry Tuttle, President & Chief Executive Officer, Health Center Partners of Southern California, to be mailed to Plaintiff and the Class, informing them, in part, of "a recent data security incident experienced by Netgain Technology, LLC ('Netgain'), the IT service provider for Health Center Partners of Southern California ('HCP')" and stating, in part, "HCP supports community health centers in a variety of ways, including collaborative grant-funded programs and services for Neighborhood Healthcare" and "**What Happened:** Netgain recently informed HCP that it had

experienced a data security incident that involved systems containing HCP data....
According to Netgain, in late September 2020, an unauthorized third party gained
access to Netgain's digital environment, and between October 22, 2020 to December
3, 2020, the unauthorized third party obtained certain files containing HCP data.
Netgain stated that it paid an undisclosed amount to the attacker in exchange for
assurances that the attacker will delete all copies of this data and that it will not
publish, sell, or otherwise disclose the data.... The information involved varies
depending on the individual but may include the following: name, address, date of
birth, diagnosis/treatment information and treatment cost information.  Once we
learned that HCP data may have been involved in the incident, we worked with our
cybersecurity experts to review the impacted files and identify the individuals whose
information was contained in such files so that we may notify such individuals. Our
investigation revealed that the impacted files contained your personal information."
An exemplar of CCC's/HCP's "**Notice of Data Breach**" form letter submitted to the
Attorney General of the State of California and mailed to Plaintiff and the Class is
attached hereto as **Exhibit A**.  Plaintiff received in the mail a CCC/HCP "**Notice of
Data Breach**" form letter, addressed to him, which alerted Plaintiff that his medical
and personal identifying information, along with other Class members, was
improperly accessed by at least one unauthorized third party.  As a result, Plaintiff
fears that disclosure and/or release of his medical and personal identifying
information created, maintained, preserved, and/or stored on Defendants' computer
networks could subject his to harassment or abuse.  Moreover, although thereafter, on
May 4, 2021, Plaintiff wrote both HCP and NH separately requesting furrther
information about this security incident, neither HCP nor NH provided a substantive
response to his requests.

55.    CCC's/HCP's "**Notice of Data Breach**" form letter submitted to the
Attorney General of the State of California and mailed to Plaintiff and the Class,
attached hereto as **Exhibit A**, concedes that Plaintiff's and the Class' "medical

information," within the meaning of Civil Code § 56.05(i), was actually viewed by further stating, "**What We Are Doing:** [] We are providing you with steps that you can take to help protect your personal information, and as an added precaution, we are offering you complimentary identity protection services through IDX, a leader in risk mitigation and response."

56.    CCC's/HCP's "**Notice of Data Breach**" form letter concludes by making the following hollow gesture, "The security of your information is a top priority for HCP, and we are committed to safeguarding your data and privacy." Other than offering "steps that you can take to help protect your personal information" and "complimentary identity protection services through IDX" "as an added precaution," CCC's/HCP's "**Notice of Data Breach**" form letter does nothing to further protect Plaintiff and the Class from future incidents of identity theft despite the severity of the unauthorized access, viewing, exfiltration, theft, disclosure and/or release of their electronic medical and personal information caused by Defendants' violations of their duty to implement and maintain reasonable security procedures and practices.

57.    To date, other than offering "steps that you can take to help protect your personal information" and "complimentary identity protection services through IDX" "as an added precaution," HCP has not offered any monetary compensation for the unauthorized disclosure and/or release of Plaintiff's and the Class' electronic medical information under the Act.  In effect, CCC doing business as HCP is shirking its responsibility for the harm it has caused, while shifting the burdens and costs of its wrongful conduct onto its patients, i.e. Plaintiff and the Class.

58.    Based upon the information posted on the U.S. Department of Health and Human Services' official website, CCC doing business as HCP reported on "04/09/2021" a "Hacking/IT Incident" involving "Network Server" affecting "293,516" persons, which involved a "Business Associate," to the U.S. Department of Health & Human Services' Office for Civil Rights.

59.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities to provide notification following a breach of unsecured protected health information.   Following a breach of unsecured protected health information, covered entities must provide notification of the breach to affected individuals.   Covered entities must *only* provide the required notifications if the breach involved unsecured protected health information. Unsecured protected health information is protected health information (PHI) that has not been rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the Secretary of the U.S. Department of Health and Human Services in guidance.   Under approved guidance of the U.S. Department of Health and Human Services, PHI is rendered unusable, unreadable, or indecipherable to unauthorized individuals if (1) electronic PHI has been encrypted as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR 164.304 definition of encryption) and (2) such confidential process or key that might enable decryption has not been breached.   By reporting this incident to the U.S. Department of Health and Human Services, CCC doing business as HCP has separately determined and is affirming that Plaintiff's and the Class' electronic PHI was either not encrypted at all, or if it was encrypted, the encryption has been breached by the "unauthorized third party."   Further, because Plaintiff's and the Class' identifiable medical information contained in NETGAIN's computer server was not rendered unusable, unreadable, or indecipherable, the "unauthorized third party" or parties who "obtained" and downloaded Plaintiff's and the Class' identifiable medical information was able to and did actually view Plaintiff's and the Class' electronic medical information contained in and "obtained" and downloaded from NETGAIN's computer server.   As a result, CCC doing business as HCP has separately determined and have affirmed that Plaintiff's and the Class' identifiable medical information contained in

NETGAIN's computer server was unencrypted and thus, the "unauthorized third party" or parties who "obtained" and downloaded Plaintiff's and the Class' identifiable medical information was able to and did actually view Plaintiff's and the Class' electronic medical information contained in and "obtained" and downloaded from NETGAIN's computer server.  Therefore, CCC doing business as HCP was negligent for failing to encrypt or adequately encrypt Plaintiff's and the Class' electronic medical information contained in NETGAIN's computer server.

60.   As a result, Defendants were negligent for failing to encrypt or adequately encrypt Plaintiff's and the Class' electronic medical information on their computer networks.  Further, because Plaintiff's and the Class' identifiable medical information on Defendants' computer networks was not rendered unusable, unreadable, or indecipherable, the "unauthorized third party" or parties who accessed Plaintiff's and the Class' identifiable medical information was able to and did view Plaintiff's and the Class' electronic medical information.

## CLASS ACTION ALLEGATIONS

61.   Plaintiff brings this action on behalf of himself individually and on behalf of all others similarly situated. The putative class that Plaintiff seeks to represent is defined as follows:

> Class:   All persons to whom Health Center Partners of Southern California sent a notification letter of a data security incident that has occurred between October 22, 2020 to December 3, 2020, an exemplar of which is attached hereto as **Exhibit A**.

The officers, directors, employees, and agents of Defendants and any "affiliate," "principal" or "subsidiary" of Defendants, as defined in the Corporations Code §§ 150, 175, and 189, respectively, are excluded from the Class.  Plaintiff reserves the right under California Rule of Court 3.765 to amend or modify the Class definition with greater particularity or further division into subclasses or limitation to particular

issues as warranted, and as additional facts are discoverd by Plaintiff during his future investigations.

62.    This action is properly maintainable as a class action.  The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible.  While the exact number of the Class is unknown to Plaintiff at this time, CCC doing business as HCP filed a report with the U.S. Department of Health & Human Services' Office for Civil Rights, on or about December 28, 2020, that this incident affected 293,516 persons.  The disposition of the claims of the members of Class through this class action will benefit both the parties and this Court.  In addition, the Class is readily identifiable from information and records in the possession of Defendants and their agents, and the Class is defined in objective terms that make the eventual identification of the Class members possible and/or sufficient to allow members of the Class identify themselves as having a right to recover.

63.    There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the class, and Plaintiff can fairly and adequately represent the interests of the Class.

64.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

a) Whether Defendants possessed Plaintiff's and the Class' medical and personal identifying information from October 22, 2020 to December 3, 2020;

b) Whether Defendants created, maintained, preserved and/or stored Plaintiff's and the Class' medical and personal identifying information,

in electronic form, onto Defendants' computer networks from October 22, 2020 to December 3, 2020;

c) Whether Defendants implemented and maintained reasonable security procedures and practices to protect Plaintiff's and the Class' medical and personal identifying information, in electronic form, within Defendants' computer networks from October 22, 2020 to December 3, 2020;

d) Whether Plaintiff's and the Class' medical and personal identifying information, in electronic form, within Defendants' computer networks from October 22, 2020 to December 3, 2020 was accessed, viewed, exfiltrated and/or publicly exposed by an unauthorized third party;

e) Whether Plaintiff's and the Class' medical and personal identifying information, in electronic form, within Defendants' computer networks from October 22, 2020 to December 3, 2020 was accessed, viewed, exfiltrated and/or publicly exposed by an unauthorized third party without the prior written authorization of Plaintiff and the Class, as required by Civil Code §§ 56.10 and 56.26;

f) Whether Defendants' creation, maintenance, preservation and/or storage of Plaintiff's and the Class' medical and personal identifying information, in electronic form, within Defendants' computer networks, accessed, viewed, exfiltrated and/or publicly exposed by an unauthorized third party was permissible without written authorization from Plaintiff and the Class or under any exemption under Civil Code § 56.10(c);

g) Whether Defendants' creation, maintenance, preservation and/or storage of Plaintiff's and the Class' medical and personal identifying information, in electronic form, within Defendants' computer networks, accessed, viewed, exfiltrated and/or publicly exposed by an unauthorized third party constitutes a release in violation of Civil Code §56.101;

h) Whether the timing of CCC's/HCP's notice that Plaintiff's and the Class' medical and personal identifying information, in electronic form, was accessed, viewed, exfiltrated and/or publicly exposed by an unauthorized third party, was given in the most expedient time possible and without reasonable delay;

i) Whether NETGAIN's failed to give notice as required by Civil Code § 1798.82(a) that Plaintiff's and the Class' medical and personal identifying information, in electronic form, was accessed, viewed, exfiltrated and/or publicly exposed by an unauthorized third party;

j) Whether Defendants' conduct constitute unlawful, fraudulent or unfair practices in  violation of Business and Professions Code §§ 17200, *et seq.*; and

k) Whether Plaintiff and the Class are entitled to actual, nominal or statutory damages, injunctive relief and/or restitution.

65.    Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, were exposed to virtually identical conduct and now suffer from the same violations of the law as other Class members.

66.    Plaintiff will fairly and adequately protect the interests of the Class. Moreover, Plaintiff has no interest that is contrary to or in conflict with those of the Class, he seeks to represent.  In addition, Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

67.    The nature of this action and the nature of laws available to Plaintiff and the other Class members make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and the other Class members for the claims alleged and the disposition of whose claims in a class action will provide substantial benefits to both the parties and the Court because:

THIRD AMENDED CLASS ACTION COMPLAINT

a) If each of the Class members were required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual member of the Class with its vastly superior financial and legal resources;

b) The costs of individual suits could unreasonably consume the amounts that would be recovered;

c) Proof of a common business practice or factual pattern which Plaintiff experienced is representative of that experienced by the Class and will establish the right of each of the members to recover on the causes of action alleged;

d) Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation; and

e) The disposition of the claims of the members of the Class through this class action will produce salutary by-products, including a therapeutic effect upon those who indulge in fraudulent practices, and aid to legitimate business enterprises by curtailing illegitimate competition.

68.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69.    Notice to the members of the Class may be made by e-mail or first-class mail addressed to all persons who have been individually identified by Defendants and who have been given notice of the data breach.

70.    Plaintiff and the Class have suffered irreparable harm and damages because of Defendants' wrongful conduct as alleged herein.  Absent certification, Plaintiff and the Class will continue to be damaged and to suffer by the unauthorized

disclosure and/or release of their medical and personal identifying information, thereby allowing these violations of law to proceed without remedy.

71.     Moreover, Plaintiff's and the Class' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied.   In addition, Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the Class, thereby making appropriate final injunctive relief with respect to, the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violations of the Confidentiality of Medical Information Act**
**California Civil Code §§ 56, et seq.**
**(On Behalf of Plaintiff and the Class Against All Defendants,**
**including CCC and HCP)**

72.     Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

73.      At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP employed persons who are "provider[s] of health care" within the meaning of Civil Code § 56.05(o) and CCC doing business as HCP is considered a "provider of health care" within the meaning of Civil Code § 56.05(o) and 56.06(a) & (b), a "contractor" under Civil Code § 56.05(d), and/or "engaged in the business of furnishing administrative services to programs that provide payment for health care services" under Civil Code § 56.26(a), and maintained and continues to maintain "medical information" within the meaning of Civil Code § 56.05(i), of Plaintiff and the Class.

74.     Plaintiff and the Class are "patients" within the meaning of Civil Code § 56.05(l) because they are natural persons, who received health care services from a provider of health care and to whom medical information pertains.

75.     At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP created, maintained,

preserved, stored, disclosed and/or delivered Plaintiff's and the Class members' medical information to NETGAIN, and caused NETGAIN to host, create, maintain, preserve, and store Plaintiff's and the Class members' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) in a digital environment for CCC doing business as HCP located on NETGAIN server within NETGAIN's digital environment.  At all times relevant to this action, CCC doing business as HCP did not obtain written authorization from the Plaintiff and the Class prior to creating, maintaining, preserving, storing, disclosing and/or delivering Plaintiff's and the Class members' medical information to NETGAIN or prior to causing NETGAIN to host, creat, maintain, preserv, and store Plaintiff's and the Class members' medical information (i.e., their names, addresses, dates of birth, diagnosis/treatment information and treatment cost information) in a digital environment for CCC doing business as HCP located on NETGAIN server within NETGAIN's digital environment.  Furthermore, CCC's/HCP's disclosure of and/or delivery of Plaintiff's and the Class members' medical information to NETGAIN was not permissible without written authorization from the Plaintiff and the Class or under any exemption under Civil Code § 56.10(c). Due to such conduct, CCC doing business as HCP disclosed to NETGAIN and allowed Plaintiff's and the Class' medical information, including Plaintiff's and the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in electronic form, to be accessed, acquired, exfiltrated and actually viewed by NETGAIN, without first obtaining an authorization from Plaintiff and the Class, constituting a disclosure in violation of Civil Code §§ 56.06(d), 56.10, 56.13, 56.245, and 56.26(a).

76.     At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, CCC doing business as HCP negligently created, maintained, preserved, and/or stored Plaintiff's and the Class' medical information, including Plaintiff's and the Class' names, addresses, dates of birth,

diagnosis/treatment information and treatment cost information, in electronic form, onto CCC's/HCP's computer networks and NETGAIN's computer server in a manner that did not preserve the confidentiality of the information, and negligently failed to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in its possession, as required by the Act, and specifically, under Civil Code §§ 56.06(d), 56.10(a), 56.13, 56.245, 56.26(a), 56.101(a), 56.101(b)(1)(A), and 56.36(e)(2)(E).

77.   Due to CCC's/HCP's negligent creation, maintenance, preservation and/or storage of Plaintiff's and the Class members' medical and personal identifying information on CCC's/HCP's computer networks and NETGAIN's computer server, CCC doing business as HCP disclosed and allowed Plaintiff's and the Class' medical information, including Plaintiff's and the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in electronic form, to be accessed,  acquired, exfiltrated and actually viewed by at least one "unauthorized third party," without first obtaining an authorization, constituting a disclosure in violation of Civil Code §§ 56.06(d), 56.10, 56.13, 56.245, and 56.26(a).

78.   Due to CCC's/HCP's negligent creation, maintenance, preservation and/or storage of Plaintiff's and the Class members' medical and personal identifying information on CCC's/HCP's computer networks and NETGAIN's computer server, CCC doing business as HCP released and allowed Plaintiff's and the Class' medical information, including Plaintiff's and the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in electronic form, to be accessed, acquired, exfiltrated and actually viewed by at least "one unauthorized third party," constituting a release in violation of Civil Code § 56.101(a).

79.   Due to CCC's/HCP's negligent creation, maintenance, preservation and/or storage of Plaintiff's and the Class members' medical and personal identifying information on CCC's/HCP's computer networks and NETGAIN's computer server, CCC doing business as HCP released and allowed Plaintiff's and the Class' medical

information, including Plaintiff's and the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in electronic form, to be accessed, acquired, exfiltrated and actually viewed by at least one "unauthorized third party," constituting a release in violation of Civil Code § 56.101(b)(1)(A).

80.   As a result of CCC's/HCP's above-described conduct in violation of the Act, Plaintiff and the Class have suffered damages from the unauthorized disclosure and/or release of their medical and personal identifying information made unlawful by Civil Code §§ 56.06(d), 56.10, 56.101.

81.   As a result of CCC's/HCP's above-described conduct in violation of the Act, Plaintiff and the Class seek nominal damages of one thousand dollars ($1,000) for each violation under Civil Code §56.36(b)(1), and actual damages suffered, according to proof, for each violation under Civil Code § 56.36(b)(2) from all Defendants.

## SECOND CAUSE OF ACTION
### Violations of the Confidentiality of Medical Information Act
### California Civil Code §§ 56, et seq.
### (On Behalf of Plaintiff and the Class Against NETGAIN)

82.   Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

83.   At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, NETGAIN is considered a "provider of health care" within the meaning of Civil Code §§ 56.05(p) and 56.06(a) & (b), and maintained and continues to maintain "medical information" within the meaning of Civil Code § 56.05(j), of Plaintiff and the Class.

84.   Plaintiff and the Class are "patients" within the meaning of Civil Code § 56.05(m).

85.   At all times relevant to this action, including the period from October 22, 2020 to December 3, 2020, NETGAIN negligently created, maintained, preserved, and/or stored Plaintiff's and the Class' medical information, including Plaintiff's and

the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in electronic form, onto NETGAIN's computer server in a manner that did not preserve the confidentiality of the information, and negligently failed to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in its possession, as required by the Act, and specifically, under Civil Code §§ 56.06(d), 56.10(a), 56.13, 56.245, 56.26(a), 56.101(a), 56.101(b)(1)(A), and 56.36(e)(2)(E).

86.     Due to NETGAIN's negligent creation, maintenance, preservation and/or storage of Plaintiff's and the Class members' medical and personal identifying information on NETGAIN's computer server, NETGAIN allowed Plaintiff's and the Class' medical information, including Plaintiff's and the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in electronic form, to be accessed and actually viewed by at least one unauthorized third party, without first obtaining an authorization, constituting a disclosure in violation of Civil Code §§ 56.06(d), 56.10, 56.13, 56.245, and 56.26(a).

87.     Due to NETGAIN's negligent creation, maintenance, preservation and/or storage of Plaintiff's and the Class members' medical and personal identifying information on NETGAIN's computer server, NETGAIN allowed Plaintiff's and the Class' medical information, including Plaintiff's and the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in electronic form, to be accessed and actually viewed by at least one unauthorized third party, constituting a release in violation of Civil Code § 56.101(a).

88.     Due to NETGAIN's negligent creation, maintenance, preservation and/or storage of Plaintiff's and the Class members' medical and personal identifying information on NETGAIN's computer server, NETGAIN allowed Plaintiff's and the Class' medical information, including Plaintiff's and the Class' names, addresses, dates of birth, diagnosis/treatment information and treatment cost information, in

electronic form, to be accessed and actually viewed by at least one unauthorized third party, constituting a release in violation of Civil Code § 56.101(b)(1)(A).

89.    As a result of NETGAIN's above-described conduct in violation of the Act, Plaintiff and the Class have suffered damages from the unauthorized disclosure and/or release of their medical and personal identifying information made unlawful by Civil Code §§ 56.06(d), 56.10, 56.101.

90.    As a result of NETGAIN's above-described conduct in violation of the Act, Plaintiff and the Class seek nominal damages of one thousand dollars ($1,000) for each violation under Civil Code §56.36(b)(1), and actual damages suffered, according to proof, for each violation under Civil Code § 56.36(b)(2).

**THIRD CAUSE OF ACTION**
**Breach of California Security Notification Laws**
**California Civil Code § 1798.82**
**(On Behalf of Plaintiff and the Class Against All Defendants)**

91.    Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

92.    Pursuant to Civil Code § 1798.82(a), "A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the person or business that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable. The disclosure shall be made in the most expedient time possible

and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system." Prior to passages of such statute, the California State Assembly cited an incident where authorities knew of the breach in security for 21 days "before state workers were told" as an example of "late notice."

93. Civil Code § 1798.82 further provides, "(h) For purposes of this section, 'personal information' means an individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted:  (1) Social security number. (2) Driver's license number or California Identification Card number. (3) Account number, credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.  (4) Medical information.  (5) Health insurance information. (i) ....  (2) For purposes of this section, 'medical information' means any information regarding an individual's medical history, mental or physical condition, or medical treatment or diagnosis by a health care professional. (3) For purposes of this section, 'health insurance information' means an individual's health insurance policy number or subscriber identification number, any unique identifier used by a health insurer to identify the individual, or any information in an individual's application and claims history, including any appeals records."

94. CCC doing business as HCP conducts business in California and owns or licenses computerized data which includes the personal information, within the meaning of Civil Code § 1798.82(h), of Plaintiff and the Class.

95. On April 8, 2021, NH caused a form letter, entitled "**Notice of Data Breach**," dated April 8, 2021, signed by  Rakesh Patel, "CEO,  Neighborhood Healthcare," to be submitted to the Attorney General of the State of California, and identified the Data Breach as occurring on "November 24, 2020" and "December 3,

2020." In its breach notice, NH stated that "On November 24, 2020, Netgain became aware of a security incident that involved unauthorized access to portions of the Netgain environment and Netgain client environments and began taking steps to investigate this incident," that "on December 3, 2020, the attacker launched a ransomware attack against Netgain, encrypting a subset of files owned by Netgain and Netgain's clients and disrupting Netgain's operations," and "Neighborhood Healthcare learned of the ransomware attack on December 3, 2020." On such information and belief, Plaintiff believes and alleges that either NETGAIN or NH or both informed CCC doing business as HCP of the Data Breach on December 3, 2020. Therefore, Plaintiff believes and alleges that CCC doing business as HCP was aware that Plaintiff's and the Class' unencrypted personal information on NETGAIN's computer server was, or is reasonably believed to have been, acquired by an unauthorized person no later than December 3, 2020, but did not begin to mail notification letters to Plaintiff and the Class until April 12, 2021.  Thus, CCC doing business as HCP waited at least 139 days before *beginning* to inform Plaintiff and the Class of this incident and the subsequent threat to Plaintiff's and the Class' personal information.  As a result, CCC doing business as HCP did not disclose to Plaintiff and the Class that their personal information was, or was reasonably believed to have been, acquired by an unauthorized person, in the most expedient time possible and without reasonable delay in violation of Civil Code § 1798.82(a).  Given the example of the Legislature finding that a delay of 21 days to be "late notice" under the statute, CCC's/HCP's delay of 139 days before *beginning* to inform Plaintiff and the Class that their personal information was, or was reasonably believed to have been, acquired by an unauthorized person by mailing CCC's/HCP's form letter to Plaintiff and the Class is presumptively unreasonable notice in violation of Civil Code § 1798.82(a).

96.    Additionally, CCC's/HCP's breach notice notification letter failed to state whether notification was delayed as a result of a law enforcement investigation,

in violation of Civil Code § 1798.82(d)(2)(D). Upon information and belief, Plaintiff believes and alleges that no law enforcement agency has notified Defendants that the notification would impede a criminal investigation justifying CCC's/HCP's decision to wait 139 days before *beginning* to mail notification letters to Plaintiff and the Class after they knew that Plaintiff's and the Class' unencrypted personal was, or was reasonably believed to have been, acquired by an unauthorized person.

97.    Plaintiff and the Class have been injured by fact that CCC doing business as HCP did not disclose their personal information was, or was reasonably believed to have been, acquired by an unauthorized person in the most expedient time possible and without reasonable delay in violation of Civil Code § 1798.82(a). CCC's/HCP's delays in informing required by Civil Code § 1798.82(a) and providing all of the information required by Civil Code § 1798.82(d) to Plaintiff and the Class that their personal information was, or was reasonably believed to have been, acquired by an unauthorized person, have prevented Plaintiff and the Class from taking steps to protect their personal information from unauthorized use and/or identify theft. Specifically, CCC's/HCP's delay prevented Plaintiff from taking steps in the most expedient time possible, on or about December 3, 2020, to protect his unencrypted personal information from unauthorized use and/or identify theft to mitigate the fallout from his personal information being stolen, such as purchasing dark web monitoring or an identity theft protection service.

98.    At all times relevant to this action, NETGAIN conducted business in California and owns or licenses computerized data which includes the personal information, within the meaning of Civil Code § 1798.82(h), of Plaintiff and the Class.

99.    In its breach notice, NH stated that "On November 24, 2020, Netgain became aware of a security incident that involved unauthorized access to portions of the Netgain environment and Netgain client environments and began taking steps to investigate this incident," that "on December 3, 2020, the attacker launched a

ransomware attack against Netgain, encrypting a subset of files owned by Netgain and Netgain's clients and disrupting Netgain's operations," and "Neighborhood Healthcare learned of the ransomware attack on December 3, 2020." On such information and belief, Plaintiff believes and alleges that either NETGAIN was aware that Plaintiff's and the Class' unencrypted personal information on NETGAIN's computer server was, or is reasonably believed to have been, acquired by an unauthorized person no later than December 3, 2020, but did not mail notification letters to Plaintiff and the Class, as required by and in violation of Civil Code § 1798.82(a).

100.   Plaintiff and the Class have been injured by fact that NETGAIN did not disclose their personal information was, or was reasonably believed to have been, acquired by an unauthorized person in the most expedient time possible and without reasonable delay in violation of Civil Code § 1798.82(a).   NETGAIN's failure to inform Plaintiff and the Class that their personal information was, or was reasonably believed to have been, acquired by an unauthorized person as required by Civil Code § 1798.82(a) has prevented Plaintiff and the Class from taking steps to protect their personal information from unauthorized use and/or identify theft. Specifically, NETGAIN's failure to provide notice prevented Plaintiff from taking steps in the most expedient time possible, on or about December 3, 2020, to protect his unencrypted personal information from unauthorized use and/or identify theft to mitigate the fallout from his personal information being stolen, such as purchasing dark web monitoring or an identity theft protection service.

101.   Plaintiff and the Class seek recovery of their damages pursuant to Civil Code § 1798.84(b) and injunctive relief pursuant to Civil Code § 1798.84(e) from all Defendants.

THIRD AMENDED CLASS ACTION COMPLAINT

**FOURTH CAUSE OF ACTION**
**Unlawful and Unfair Business Acts and Practices in Violation of**
**California Business & Professions Code §17200,** *et seq.*
**(On Behalf of Plaintiff and the Class Against All Defendants)**

102.   Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

103.   The acts, misrepresentations, omissions, practices, and non-disclosures of Defendants as alleged herein constituted unlawful and unfair business acts and practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

104.   By the aforementioned business acts or practices, Defendants have engaged in "unlawful" business acts and practices in violation of the aforementioned statutes, including Civil Code §§ 56.06(d), 56.10(a), 56.26(a), 56.36(e)(2)(E), 56.101(a), 56.101(b)(1)(A), 1798.82(a) and 1798.82(d).  Plaintiff reserves the right to allege other violations of law committed by Defendants which constitute unlawful acts or practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

105.   By the aforementioned business acts or practices, Defendants have also engaged in "unfair" business acts or practices in that the harm caused by Defendants' failure to maintain adequate information security procedures and practices, including but not limited to, failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions, failing to properly and adequately educate and train its employees, failing to put into place reasonable or adequately computer systems and security practices to safeguard patients' identifiable medical information including access restrictions and encryption, failing to have adequate privacy policies and procedures in place that did not preserve the confidentiality of the medical and personal identifying information of Plaintiff and the Class in their possession, and failing to protect and preserve confidentiality of electronic medical information of Plaintiff and the Class in their possession against

disclosure and/or release, outweighs the utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, and causes substantial injury to Plaintiff and the Class.

106.   Defendants have obtain money and property from Plaintiff and the Class because of the payment of the services and products they received from Defendants. Plaintiff and the Class have suffered an injury in fact by acquiring less in their transactions with Defendants for the services and products they received from Defendants than they otherwise would have if Defendants would had adequately protected the confidentiality of their medical and personal identifying information.

107.   Pursuant to the Business & Professions Code § 17203, Plaintiff and the Class seek an order of this Court requiring Defendants awarding Plaintiff and the Class restitution of monies wrongfully acquired by Defendants in the form of payments for services by means of such unlawful, fraudulent and unfair business acts and practices, so as to restore any and all monies to Plaintiff and the Class which were acquired and obtained by means of such unlawful, fraudulent and unfair business acts and practices, which ill-gotten gains are still retained by Defendants.

108.   The aforementioned unlawful, fraudulent and unfair business acts or practices conducted by Defendants have been committed in the past and continues to this day.  Defendants have failed to acknowledge the wrongful nature of their actions. Defendants have not corrected or publicly issued comprehensive corrective notices to Plaintiff and the Class, and have not corrected or enacted adequate privacy policies and procedures to protect and preserve confidentiality of medical and personal identifying information of Plaintiff and the Class in their possession.

109.   Because of Defendants' aforementioned conduct, Plaintiff and the Class have no other adequate remedy of law in that absent injunctive relief from the Court and Defendants are likely to continue to injure Plaintiff and the Class.

110.   Pursuant to Business & Professions Code § 17203, Plaintiff and the Class also seek an order of this Court for equitable and/or injunctive relief in the form

of requiring Defendants to correct its illegal conduct that is necessary and proper to prevent Defendants from repeating their illegal and wrongful practices as alleged above and protect and preserve confidentiality of medical and personal identifying information of Plaintiff and the Class in Defendants' possession that has already been accessed, viewed, exfiltrated and/or publicly exposed by at least one unauthorized third party because by way of Defendants' illegal and wrongful practices set forth above. Pursuant to Business & Professions Code § 17203, Plaintiff and the Class further seek an order of this Court for equitable and/or injunctive relief in the form of requiring Defendants to publicly issue comprehensive corrective notices.

111.   Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff and the Class also seek the recovery of attorneys' fees and costs in prosecuting this action against Defendants under Code of Civil Procedure § 1021.5 and other applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court grant Plaintiff and the proposed Class the following relief against Defendants, and each of them:

### As for the First Cause of Action

1. For nominal damages in the amount of one thousand dollar ($1,000) per violation to Plaintiff individually and to each member of the Class pursuant to Civil Code § 56.36(b)(1);

2. For actual damages according to proof per violation pursuant to Civil Code § 56.36(b)(2);

### As for the Second Cause of Action

3. For nominal damages in the amount of one thousand dollar ($1,000) per violation to Plaintiff individually and to each member of the Class pursuant to Civil Code § 56.36(b)(1);

4. For actual damages according to proof per violation pursuant to Civil Code § 56.36(b)(2);

**As for the Third Cause of Action**

5. For damages according to proof to Plaintiff individually and to each member of the Class pursuant to California Civil Code § Civil Code § 1798.84(b);

6. For injunctive relief pursuant to California Civil Code § Civil Code § 1798.84(e);

**As for the Fourth Cause of Action**

7. For an order awarding Plaintiff and the Class restitution of all monies wrongfully acquired by Defendants by means of such unlawful, fraudulent and unfair business acts and practices;

8. For injunctive relief in the form of an order instructing Defendants to prohibit the unauthorized release of medical and personal identifying information of Plaintiff and the Class, and to adequately maintain the confidentiality of the medical and personal identifying information of Plaintiff and the Class;

9. For injunctive relief in the form of an order enjoining Defendants from disclosing the medical and personal identifying information of Plaintiff and the Class without the prior written authorization of each Plaintiff and the Class member;

**As to All Causes of Action**

10. That the Court issue an Order certifying this action be certified as a class action on behalf of the proposed Class, appointing Plaintiff as representative of the proposed Class, and appointing Plaintiff's attorneys, as counsel for members of the proposed Class;

11. For an award of attorneys' fees as authorized by statute, including, but not limited to, the provisions of California Code of Civil Procedure § 1021.5, and as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

12. For costs of the suit;

13. For prejudgment interest at the legal rate; and

14. Any such further relief as this Court deems necessary, just, and proper.

Dated: September 16, 2024                    **KEEGAN & BAKER LLP**


By:   <u>s/ *Patrick N. Keegan*</u>
         Patrick N. Keegan, Esq.
         Attorney for Plaintiff

THIRD AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: September 16, 2024                **KEEGAN & BAKER LLP**

By:   <u>s/ *Patrick N. Keegan*</u>
        Patrick N. Keegan, Esq.
        Attorney for Plaintiff

THIRD AMENDED CLASS ACTION COMPLAINT

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that, on September 16, 2024, a true and correct copy of the **HIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES,  RESTITUTION, AND INJUNCTIVE RELIEF FOR VIOLATIONS OF: (1) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ*.;   (2) BREACH OF CALIFORNIA SECURITY NOTIFICATION LAWS, CALIFORNIA CIVIL CODE § 1798.82; AND (3) BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ*.** was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's EM/ECF System.

<u>s/ *Patrick N. Keegan*</u>
Patrick N. Keegan, Esq.
pkeegan@keeganbaker.com